## Cope v. Merwine, County Treasurer, et al.

*C. H. Rhodes*, for plaintiff; *Coles Price*, for defendants.

SHULL, P. J., Nov. 26, 1928.—This matter comes before the court after bill is filed and preliminary injunction issued. The defendants appear *d. b. e.*, as provided by Equity Rule No. 29, and demur to the jurisdiction of the court in this case.

In disposing of this matter on this demurrer, the court must accept as established every allegation of fact in the bill contained. As we view this matter, it falls within the principle enunciated by the Supreme Court of Pennsylvania in the case of Isett *v.* Meehan, 232 Pa. 504. Like that case, it is not a proceeding against the Commonwealth of Pennsylvania, but is against the Game Commissioners of the Commonwealth of Pennsylvania in their official capacity. It is not to enjoin them from discharging any official duty imposed upon them by the statute, but it is to prevent them from doing what

is to be regarded as a mere ministerial act under the general powers and discretion conferred upon this commission by the Legislature of Pennsylvania.

If, in the performance of such ministerial act, they defy the statutory directions and limitations with which the legislature has seen fit to surround the exercise of their discretion, and when, by proceeding as they propose, they would, for a period of fifteen days, authorize a veritable army of men with high-powered rifles, which propel a bullet a distance of a mile or more, to come within the bounds of the county in which this court has jurisdiction and unduly subject residents and travelers in the community to the dangers necessarily incident thereto, and subject property owners to the annoyance and damage of a multitude of trespasses on their property and the expense and trouble of hiring private guards to prevent such trespasses, and to a multitude of actions at law, both civil and criminal, which would necessarily result from such actions, and all within the jurisdiction of this court, and all of which would be brought about through the issuing by the County Treasurer of Monroe County, at the instance of the Board of Game Commissioners of Pennsylvania, what purport to be such licenses to hunt deer without visible antlers—surely the imminence of such conditions should and would, in our opinion, give to this court jurisdiction to prevent the distribution of such purported licenses, unless, by reason of a valid statute of this Commonwealth, this commission has authority of law to impose such conditions on this community. If they have statutory authority so to do, then, to our mind, clearly this court has no jurisdiction; if the law makes this a part of their official duty and not a mere ministerial act, we, of course, have no jurisdiction; and if the law places this ministerial act within their discretion, and if they have strictly observed the statutory requirements in exercising that authority, then, again, we would have no jurisdiction.

We do not feel that it could be contended that this is a part of their official duty as imposed by statute, but it could be and is contended that it is among the discretionary powers conferred on them by the statute. If to do the thing which this Game Commission proposes to do would have been within the authority of the legislature to authorize by statute, then from the sweeping authority conferred by the statute upon the Board of Game Commissioners, this board would have a legal right to decree it, if, as we have said, they have observed the conditions of the statute, and, in that instance, this court would not have the authority to review their discretion, though we are of the opinion that even such discretion might be reviewed by the Court of Dauphin County. It would not be seriously contended that even the sweeping authority conferred by the legislature on this Game Commission could by any stretch of the imagination give to this commission authority the legislature itself did not possess. Time was when it was fully and clearly recognized that a legislature could not delegate its authority to legislate, but in these days of commissions and bureaus that principle of government seems to have become almost a myth, though legislatures are still to some degree limited by constitutions, and these same constitutions, to the same degree, would limit the rules and regulations of bureaus and commissions.

While, to the mind of this court, there may be some question as to the constitutionality of some of the sections of the act relied on in this proceeding, we are, however, not passing on that question at this time.

The questions of law involved in this demurrer must necessarily be passed on in disposing of the question now before us.

The respondents in this case contend that they are acting by virtue of the authority conferred on them by sections 509 and 511 of what is commonly called "The Game Code." Let us first analyze these sections:

Section 509 of the Game Code, as it is now in force, is section 1 of the Act of May 14, 1925, P. L. 752. This section is wide in its scope, inasmuch as its subject is game birds, game animals and fur-bearing animals. Its scope is wide both in the subject-matter it includes and in the sweeping authority it confers on the Board of Game Commissioners to deal with such birds and animals. Deer without visible antlers are not game and have not been game in the State of Pennsylvania for a considerable number of years. Neither are they fur-bearing animals within the common meaning of that term, nor within the legislative intent. Deer without visible antlers were not intended to be included within the provisions of section 509; for when, in the same acts of assembly, viz., the Act of May 24, 1923, § 511, P. L. 359, and again in the Act of May 14, 1925, § 3, P. L. 752, the legislature see fit to treat in one and the same section game birds, game animals and fur-bearing animals, and then in another and distinct section make separate and distinct provisions relative to deer without visible antlers, the conclusion that the legislature intended to segregate them from any general class of game or wild animals is irresistible, and that the legislature actually did so is manifest when we are confronted with section 511 of the Game Code. Consequently, section 509 has no application whatever to the matter before us, and we need not consider it in determining the question before us.

Section 511 was intended to apply to deer without visible antlers, which is the subject of this controversy, and is the only section of this act it is necessary for us to consider. Section 511 does not confer upon this commission autocratic, arbitrary power and authority to declare an open season on deer without visible antlers. Under that section, they have power to do so only on *information*, not rumors or gossip, but information that would satisfy an ordinarily reasonable person of the necessity for such action through the existence of some particular reason for reducing their number; and, further, even when such reason exists, then must this Game Commission comply with the requirements of the statute in authorizing the killing of such deer. This statute is, of course, in derogation of the common law and must be strictly complied with if it is to place in operation the things contemplated in it. Section 511 provides that deer without visible antlers may be killed during "a special season of such length as the Board may deem advisable either *prior to* or following the regular open season for male deer." The regular open season for killing male deer is a well-recognized period. The meaning of that, to the mind of the court, is so clear that it is hardly subject to argument. It means, and can mean only, that period of the year during which, by the existing statutes of this Commonwealth, the season of killing of male deer is open. This would not, in the opinion of this court, be affected one iota by the fact that the Game Commission may, under certain conditions, temporarily close such season. It would still remain the regular open season in the statute. This particular period of the year was withheld by the legislature from the authority of this Game Commission, but in this instance the period designated by the Game Commission for a special season on deer without visible antlers is the very period covered by the statute as the regular open season, and this, under the law, the Board of Game Commissioners may not do. As we have said, when the legislature delegates authority to a commission or board, the right to exercise that authority depends upon a strict compliance with the conditions under which such authority is delegated, and the presumption relative to delegated authority is always against any grant of power other than that which is clearly expressed and shown by the act of assembly which

makes such delegation of power and authority; and, as we have said, such statutes must be strictly complied with and must be strictly construed.

Has the Game Commission complied with the conditions which would legalize under the licenses which are about to be issued by the County Treasurer of the County of Monroe the killing of deer without visible antlers? They have chosen a season which the legislature has specifically withheld from them and again the statute under which they are acting provides that one desiring a special license "shall also apply to and obtain from the board at Harrisburg a special deer license." From the facts in this bill, we must conclude that no such application was made by any one of the persons to whom the Board of Game Commissioners are now proposing to have the County Treasurer of Monroe County issue what purport to be special licenses.

Under the act of assembly, the County Treasurer has absolutely no authority to issue special licenses. He is not by the act of assembly made an arm of the Game Commission in this instance as he is made an arm relative to the issuing of regular hunting licenses. It is contended on behalf of the Game Commission that the County Treasurer is acting as its agent, but the County Treasurer, like the Game Commission itself, is a mere statutory creature and has only such authority as is specifically designated to him by act of assembly, and we are not conversant with any act of assembly which would permit a county treasurer as an official to act as agent for any one or anything; and, as the licenses the Game Commission proposes to issue are licenses, which on their face show they are issued by the County Treasurer, they are not such licenses as could be issued under the authority of the act of legislature governing this Game Commission. Notwithstanding the fact that we hold the Board of Game Commissioners has not placed itself within the operation of the law and that they cannot at the time proposed issue special hunting licenses, we realize that that fact would not of itself give to this court jurisdiction over the Game Commission; but when they manifest their intention of having issued within the County of Monroe, by its County Treasurer, licenses which are not authorized by law and are doing it under the name of the Board of Game Commissioners of the Commonwealth of Pennsylvania, and when such action will result in flooding this county, for a period of fifteen days, with a veritable army of men, armed with high-powered rifles, who, under the color of authority of such illegally issued licenses, will hunt and shoot at doe throughout the length and breadth of the county, thereby subjecting both residents and travelers to the risks necessarily incident to flying bullets and at a time other than a legal hunting season, and when they further subject the property owners in this county to the trouble and expense of hiring private patrolmen to protect their property against trespass and damage and face the residents and property owners, as well as the courts of this county, with the expense and burden of pursuing a multiplicity of law suits, both criminal and civil, which will certainly follow such invasion of the county, private rights are invaded, serious and irreparable damage is threatened and will be suffered and these purported licenses being within the County of Monroe, their issuance not being a part of the statutory duty of this commission, nor even within their discretion, they not having complied with the law, we feel that this court does have jurisdiction to restrain their issuance by the County Treasurer and by the Board of Game Commissioners of the Commonwealth of Pennsylvania, or by any one else who might undertake to issue such licenses and bring about such condition within the county without the authority of law.

This court having jurisdiction, the exceptions are, therefore, dismissed.

From C. C. Shull, Stroudsburg, Pa.